IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRENDA CORICA,** | : | |
| | | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | | |
| v. | : | |
| | | |
| **PHILADELPHIA MENTAL HEALTH CARE CORP.,** | : | |
| | | **NO. 09-5766** |
| **Defendant.** | : | |

**M E M O R A N D U M**

**GENE E.K. PRATTER, J.**

**OCTOBER 12, 2012**

Brenda Corica has sued her former employer, the Philadelphia Mental Health Care Corporation ("PMHCC").  Ms. Corica alleges that PMHCC subjected her to a hostile work environment and retaliated against her in violation of Title VII and the Pennsylvania Human Relations Act ("PHRA"), and that it negligently employed Keith Perry, her supervisor.  PMHCC has moved for summary judgment against Ms. Corica's Title VII claims.  For the reasons that follow, the Court denies the motion.

**I.  Factual Background**

Ms. Corica began working for PMHCC as a computer-support specialist in 2005.[1]  In February 2007, PMHCC promoted Mr. Perry, one of Ms. Corica's co-workers, who then became her supervisor.  The parties agree that Mr. Perry kissed Ms. Corica on July 19, 2007.  At his deposition, Mr. Perry stated that he entered Ms. Corica's office and gave her a "quick kiss" on

---

[1] The facts set forth in this section are undisputed unless otherwise noted.

either her head or her lips, after she had kissed him earlier that day.  However, in moving for summary judgment PMHCC acknowledges that Ms. Corica has a very different recollection of this event, as she alleges that Mr. Perry entered her office, grabbed her, and shoved his tongue into her mouth, at which point she pushed him away.

Ms. Corica alleges that Mr. Perry's behavior towards her changed following the kiss.  She states that Mr. Perry repeatedly told her, "I'm the boss [and] I can fire you," a statement he never made before the kissing incident.  Moreover, Ms. Corica claims that Mr. Perry began threatening to write her up and screamed at her on multiple occasions when he had never done so before.  However, Mr. Perry has disputed this characterization of his post-kiss behavior and denied screaming at Ms. Corica.

On December 24, 2007, following a phone call with Mr. Perry in which she alleges that he screamed at her for ten minutes about going to lunch (an allegation that Mr. Perry denies), Ms. Corica emailed Dave Silver, another company supervisor, to arrange a meeting.  The parties agree that Mr. Silver met with Ms. Corica on December 27, that she began to cry and complain of harassment during the meeting, and that Mr. Silver asked Ms. Corica to not discuss the specifics of the harassment or identify her harasser, but instead directed her to speak with human resources personnel.

On January 7, 2008, Ms. Corica spoke with Sylvia Cleveland-Jackson and Rachel Holmes-Pittman, two individuals who worked in PMHCC's human resources department.[2]  During the conference call, these individuals discussed a grievance written by Ms. Corica that Ms. Holmes-Pittman received on January 7.  The grievance alleged that Mr. Perry forcibly kissed Ms. Corica, that he subsequently used profanity and screamed at her during a meeting on

---

[2]  Ms. Jackson participated in the conversation by telephone because she was on vacation.

2

November 15, and that he yelled at her again over the telephone on December 24.  Ms. Cleveland-Jackson responded by promising to investigate Ms. Corica's allegations.

The next day, Ms. Cleveland-Jackson and Ms. Pittman interviewed Mr. Perry, who told them his version of the kissing incident, including that Ms. Corica previously kissed him, and also disputed Ms. Corica's characterization of their conversations on November 15 and December 24.  On January 10, PMHCC held a meeting with Mr. Perry and Ms. Corica and decided to suspend both employees for two days and gave them both disciplinary reviews, on the grounds that both had behaved inappropriately.  In Ms. Corica's review, PMHCC gave her an overall rating of "unacceptable," the lowest possible rating under PMHCC's performance rubric.  Finally, PMHCC informed Ms. Corica that Mr. Perry would continue to supervise her.  Ms. Corica alleges that, following this meeting, Mr. Perry refused to update her computer so that she could fully participate in a work-related training session.

In August 2008, Ms. Corica took leave from PMHCC under the Family and Medical Leave Act (FMLA) due to anxiety caused by Mr. Perry's behavior.[3]  On October 28, the day Ms. Corica's FMLA leave expired, Ms. Corica's attorney wrote a letter to Ms. Cleveland-Jackson and stated that the trauma caused by her alleged harassment would prevent Ms. Corica from returning to work.  That same day, PMHCC terminated Ms. Corica for failing to return to work after her FMLA leave ended.

**II.  Standard of Review**

---

[3] While PMHCC disputes the reason that Ms. Corica took FMLA leave, at oral argument its counsel stipulated that (at this stage of the litigation) it would accept Ms. Corica's contention that she went on leave due to anxiety caused by Mr. Perry.  *See* Transcript of Oral Argument at 37:6-12, 58:3-6, Corica v. Philadelphia Mental Health Care Corp., No. 09-5766 (E.D. Pa. Jan. 31, 2011), ECF No. 38.

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the court of the basis for its motion for summary judgment and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving

party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III.  Sexual Harassment – Hostile Work Environment

*A.  Legal Standard*

Title VII prohibits conduct motivated by an individual's sex that "discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1).  A sexual harassment claim exists under Title VII if an employee suffers harassment "so severe or pervasive as to alter the conditions of . . . employment and create an abusive working environment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (internal quotations omitted).  A plaintiff bringing a claim for hostile work environment sexual harassment must therefore prove that: "(1) she suffered intentional discrimination because of her sex; (2) the harassment complained of was pervasive or severe; (3) the harassment detrimentally affected her; (4) the conduct she complained of would have detrimentally affected a 'reasonable' woman in her position; and (5) there is a basis for holding an employer liable." *Ascolese v. SEPTA*, No. 07-665, 2008 U.S. Dist. LEXIS 41097, at *18 (E.D. Pa. May 22, 2008) (citing *West v. Phila. Elec. Co.*, 45 F.3d 744, 753 (3d Cir. 1995)).

The Court must consider the totality of the circumstances when evaluating these elements to determine if the conditions of employment have been altered. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.").  Additionally, the Court recognizes that Title VII is not a "general civility code," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998), and that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will

not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (quoting *Faragher*, 524 U.S. at 788).

### B. Application

A reasonable jury could find that Ms. Corica has satisfied all five elements of a hostile work environment claim. In regards to the first element, a jury could reasonably infer that Ms. Corica faced discriminatory conduct as a result of her sex, based on her testimony that Mr. Perry forcibly kissed her. The Supreme Court has recognized that "[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex." *Oncale*, 523 U.S. at 80.

Furthermore, Mr. Perry's alleged conduct after the kiss, such as yelling at Ms. Corica and threatening to fire her, also could constitute discrimination due to sex. The Third Circuit Court of Appeals has recognized that an overtly sex-based incident followed by incidents that lack apparent sex-based intent on their face can, in aggregate, constitute discrimination motivated by sex. *See Jensen v. Potter*, 435 F.3d 444, 454 (3d Cir. 2006), *overruled in part on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Therefore, a reasonable jury could find that Mr. Perry intentionally discriminated against Ms. Corica based on her sex by looking to his post-kiss behavior towards her.

As for the second element of Ms. Corica's claim, a reasonable jury could conclude that she suffered severe or pervasive harassment. In evaluating this element, the Third Circuit Court of Appeals has held that courts "should not consider each incident of harassment in isolation . . . [but] must evaluate the sum total of abuse over time." *Durham Life Ins. Co. v. Evans*, 166 F.3d

139, 155 (3d Cir. 1999).  Ms. Corica has presented evidence that, over a period of seven months, Mr. Perry forcibly kissed her, screamed at her for long periods on two occasions, thwarted her from participating in a necessary training, repeatedly reminded her that he could fire her, and threatened to write her up.  Viewing such evidence under "the totality of the circumstances," the Court finds that a jury could infer that Ms. Corica suffered "discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of" her employment. *See Abramson v. William Paterson Coll.*, 260 F.3d 265, 279 (3d Cir. 2001).  Although PMHCC makes two arguments to the contrary, neither are persuasive.[4]

First, citing *Dreshman v. Henry Clay Villa*, 733 F. Supp. 2d 597 (W.D. Pa. 2010), PMHCC argues that a series of "isolated" events cannot constitute severe or pervasive harassment.  However, the harassment complained of in *Dreshman* consisted of events strung out over a ten-year period, *id.* at 612-14, whereas Ms. Corica alleges that she repeatedly suffered harassment during the more condensed seven-month period of July 2007 through January 2008.

Second, PMHCC argues that no issue of fact exists under the second element because no evidence shows that the harassment interfered with Ms. Corica's work performance.  Assuming *arguendo* the truth of this contention, harassment can rise to a severe or pervasive level even if it does not create a "tangible effect[]" that affects an employee's performance, because "no single

---

[4] The Court notes that, in its briefing, PMHCC argues that Ms. Corica fails on the second element because the harassment she alleges was not "pervasive and regular."  However, the Third Circuit Court of Appeals has held that the relevant issue is whether harassment is "severe *or* pervasive," not whether it is "pervasive *and* regular."  *See Jensen*, 435 F.3d at 449 n.3 (emphasis supplied).  Moreover, the Court notes that, in analyzing the second element of Ms. Corica's hostile work environment claim, PMHCC's brief fails to address her allegations that Mr. Perry prevented her from participating in a training session, began to remind her that he could fire her, and threatened to write her up.  In any event, there is surely enough in the record to await a jury's assessment as to the severity or pervasiveness of the conduct.

7

factor is required" before a jury can find that a hostile work environment exists. *Harris*, 510 U.S. at 22-23.

Ms. Corica easily satisfies the third element of the test, as she has testified that Mr. Perry's harassment detrimentally affected her psychological well-being.[5] Moreover, a jury could find that Mr. Perry's behavior also would detrimentally affect a "reasonable" woman. Courts must evaluate this objective component of a hostile work environment claim by "looking at all the circumstances," *Faragher*, 524 U.S. at 787 (citation omitted), and here those circumstances include evidence that Mr. Perry forcibly kissed Ms. Corica, repeatedly screamed at her, prevented her from participating in a training, and threatened to fire her and write her up. A reasonable jury could credit these allegations and conclude that such behavior would harm a reasonable woman.

Finally, a jury could hold PMHCC liable for Ms. Corica's hostile work environment. The Supreme Court has held:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense[.] . . . *No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.*

*Faragher*, 524 U.S. at 807-08 (emphasis supplied) (citation omitted). Here, the parties do not dispute that Mr. Perry supervised Ms. Corica, and *Faragher* clearly establishes that a termination qualifies as a "tangible employment action." Therefore, PMHCC cannot raise an affirmative defense if Mr. Perry's harassment culminated in Ms. Corica's termination.

---

[5] In fact, PMHCC concedes that the kissing incident had a detrimental effect on Ms. Corica.

8

This Court has held that "a plaintiff must show that [a] tangible employment action was related to, or caused by, the alleged unlawful harassment" of the plaintiff's supervisor. *Seybert v. Int'l Grp., Inc.*, No. 07-3333, 2009 WL 1971439, at *3 (E.D. Pa. July 6, 2009). However, the question of relatedness is generally "one of fact that the jury must decide." *Id.* Here, Ms. Corica alleges that she took FMLA leave in August 2008 due to anxiety caused by Mr. Perry's behavior.[6] She also alleges that this anxiety persisted and prevented her from returning to work after 12 weeks, and the parties agree that PMHCC terminated Ms. Corica because she did not return from FMLA leave. Based on these facts, a reasonable jury could determine that Ms. Corica's termination was related to or caused by Mr. Perry's harassment. Because a genuine issue of fact exists regarding all five elements of the hostile work environment test, the Court must deny PMHCC's motion with respect to this claim.

**IV. Retaliation**

*A. Legal Standard*

Title VII's anti-retaliation provision broadly prohibits any employer conduct that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" and is "not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N.*, 548 U.S. at 68 (internal quotations omitted). As both parties recognize: "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity, (2) the employer took a materially adverse action against her, and (3) there was a causal connection between the protected activity and the

---

[6] At oral argument, PMHCC's counsel conceded that (at this stage of the litigation) the parties had to accept Ms. Corica's contention that she went on FLMA leave for this reason. *See* Transcript of Oral Argument at 37:6-12, 58:3-6, Corica v. Philadelphia Mental Health Care Corp., No. 09-5766 (E.D. Pa. Jan. 31, 2011), ECF No. 38.

9

employer's action." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 231-32 (3d Cir. 2007) (citing *Moore v. City of Phila.*, 461 F.3d 331, 341-42 (3d Cir. 2006)).

If the employee establishes this *prima facie* case of retaliation, the familiar *McDonnell Douglas* approach applies in which "the burden shifts to the employer to advance a legitimate, non-retaliatory reason" for its conduct. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997). This is a relatively light burden which can be satisfied "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *see also Haqq v. Pa. Dept. of Pub. Welfare,* No. 09-0042, 2010 WL 1253452, at *6 (E.D. Pa. Mar. 23, 2010).

If the employer meets this burden, "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Krouse*, 126 F.3d at 500-01. To survive a motion for summary judgment, "a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions." *Moore*, 461 F.3d at 342.

*B. Application*

In regards to Ms. Corica's *prima facie* case of retaliation, PMHCC concedes that Ms. Corica engaged in protected activity when she filed her grievance against Mr. Perry on January 7, 2008, and when she filed a complaint with the EEOC later that month. PMHCC also acknowledges that adverse employment actions occurred when it disciplined Ms. Corica on January 10, 2008, and when it terminated her in October 2008. However, PMHCC argues that a reasonable jury could not find that there was a causal connection between these events. The Court disagrees.

The Third Circuit Court of Appeals requires courts to consider "a broad array of evidence in determining whether a sufficient causal link exists" in a retaliation case. *LeBoon*, 503 F.3d at 232 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000)). Here, Ms. Corica points to evidence that would allow a jury to infer a causal connection between Ms. Corica's grievance and discipline. For one, the discipline occurred a mere three days after PMHCC received the grievance, a fact that strongly supports a connection between the two events. *See LeBoon*, 503 F.3d at 232 ("Where the temporal proximity between the protected activity and the adverse action is unusually suggestive, it is sufficient standing alone to create an inference of causality and defeat summary judgment.") (internal quotation omitted); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (denying summary judgment when an adverse action occurred two days after an employer received notice of the plaintiff's EEOC claim); *see also Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997) ("Our cases have established that temporal proximity between the protected activity and the termination is sufficient to establish a causal link.").

Moreover, a jury could infer causality based on the fact that PMHCC gave Mr. Perry and Ms. Corica equivalent punishments, even though Mr. Perry allegedly forced himself onto Ms. Corica and verbally abused her. *See Farrell*, 206 F.3d at 280-81 (evidence of an employer's "conduct towards others" can "substantiate a causal connection for purposes of the [plaintiff's] prima facie case"). The Court thus finds that sufficient evidence exists to establish a causal connection in this case.

PMHCC has set forth a legitimate, non-retaliatory reason for disciplining Ms. Corica, as it argues that it found Mr. Perry's version of events more credible than her version and thus believed she acted inappropriately by kissing Mr. Perry and touching his buttocks. However,

genuine issues of fact exist regarding whether this proffered reason for the discipline was pretextual. The Third Circuit Court of Appeals has held that "evidence supporting [a] prima facie [retaliation] case is often helpful in the pretext stage and nothing about the McDonnell Douglas formula requires us to ration the evidence between one stage or the other." *Id.*, 206 F.3d at 286. Here, a jury could find that the close timing between Ms. Corica's grievance and discipline demonstrates that PMHCC's stated reason for that discipline was pretextual. Similarly, a jury could reasonably infer pretext because Ms. Corica received performance ratings of "above-standard" and "outstanding" prior to being disciplined, and because PMHCC did not interview at least two of the co-workers Ms. Corica identified in her grievance prior to disciplining her. Because Ms. Corica has produced sufficient evidence for a jury to find that PMHCC's proffered reason for her discipline was pretextual, the Court denies PMHCC's motion for summary judgment with respect to her retaliation claim.[7]

## V.  Conclusion

For the foregoing reasons, PMHCC' s motion for summary judgment is denied. An Order consistent with this Memorandum follows.

BY THE COURT:

_____
GENE E.K. PRATTER
United States District Judge

---

[7] At oral argument, PMHCC's counsel stated that it only sought to dismiss Ms. Corica's negligent employment claim to the extent the Court dismissed her federal claims. *See* Transcript of Oral Argument at 29:7-14, 54:10-23, Corica v. Philadelphia Mental Health Care Corp., No. 09-5766 (E.D. Pa. Jan. 31, 2011), ECF No. 38. The Court will therefore not grant summary judgment with respect to the negligent employment claim.